May it please the Court, my name is Elizabeth Honaker, and I represent the plaintiff appellant in this matter, Mr. Larry Schlosser. This case is about a long-term employee at the Billings, Montana, post office. He was a mechanic and welder, and he had an excellent record. And he brought claims of age and disability discriminations and retaliation against the post office. This appeal is from the district court's dismissal of all counts within his complaint on the response motion for summary judgment. Mr. Schlosser is asking this Court to reverse the decision of the district court and to remand this case. What's Mr. Schlosser's strongest argument of that there was an adverse employment impact from the post-February 11, 1997, event? From the post-1997? Mm-hmm. After that, yeah. You mean after the February 11, 1997, event? What adverse employment action occurred? Okay. I guess there would be two. First of all, which is in Count 5 of his complaint, he, on June 30, 1997, received a letter from the post office which indicated he had the choice, the option of either retiring from the post office or he would be removed, and he was given five days to do so. Under the regulations of the post office, which are cited in my brief, he was to receive legally 12 months of leave without paying under the Family Medical Leave Act, and he was not given that option in that letter. That leave would have been a reasonable accommodation for a man who had just been found weeks before not fit to return to duty at that time. But that did not mean he could not return to duty at a later time. And so that caused extreme stress. So what's the actual adverse employment action? Is it the letter? Is it the what's the adverse employment action? In that situation, it was the letter sent to him not fully advising him of his rights. I would, the second one is, would be the phone calls that occurred to him, the hang-up phone calls that occurred over several, a period of several months in late 1997 to early 1998 from his supervisor, Leo Harrell, who, which eventually involved the police department, the sheriff's department, psychiatrists, a trap, phone trap from the phone department. And obviously, this action also caused him extreme stress. And I believe under Ninth Circuit law, as well as the Supreme Court law cited in my brief, that the adverse employment action does not require an act affecting the terms or conditions of employment. And it does not require the person to be employed, even though he was still employed at that time. It has to just be an act that would reasonably deter a person from engaging in this kind of protected activity. Did that answer your question? Yes. Your Honors, it's been 10 years since Mr. Schlosser filed his initial EEO complaint, and 10 years since the U.S. Postal Service has had notice of his claims of age and disability discrimination. And as you are aware, the age discrimination in counts 1, 2, and 3 were dismissed by the That came up much later, correct? When he went there, when did he first seek leave to file an amended complaint, age and age discrimination? Well, actually, after the motion for summary judgment was filed, and subsequent counsel, which was me, who was not involved in the initial pleadings, conceded that Title VII was the wrong citation. It should have been the ADEA. At that point, the judge considered that a de facto motion to amend the complaint. Does that answer your question? Anyway, the law is clear that leave to amend should be freely given. And in the Fohman v. Davis Supreme Court case, the four factors that are raised in that case have been recognized by this Court and utilized by this Court were not implicated in Mr. Schlosser's case. Do you think you need leave to amend? I think that the pleadings were sufficient. Even though there was an incorrect citation saying that the claims were in with the purview of Title VII, they also said they were under the Rehabilitation Act as amended. They failed to cite the ADEA. However, I believe that the case law is clear that I have cited to that you look at the substance of the complaint, at the factual allegations, and some technicality should not be the reason to dismiss a complaint. This was a technical error. It was an oversight by former counsel to Title VII. Well, didn't the – okay. We're reviewing the court for abuse of discretion on the failure of leave to amend. That's correct. Didn't the court believe that Mr. Schlosser had not timely exhausted his administrative remedies on the age discrimination, and so it would be futile to allow the amendment? The court found that on counts 1, 2, and 3, he had not exhausted administrative remedies by reason that you have to bring a complaint to a counselor within 45 days of the alleged act. He went home on his last day of work. He went partially blind on that day. He entered into a clinical depression. He had never filed any EEOs, as I saw on the record, before. He did not know the rules. He did not ever go back to the workplace. And under Zipes, the U.S. Supreme Court case, which allows equitable tolling and says that this is not a jurisdictional prerequisite, but instead is a limitation period, and I would argue that – 10 years? No. No. No. He – the act occurred February 11, 1997. He, on July 15, 1997, is when he contacted the counselor for the EEO. But wasn't the court saying he didn't exhaust it for the age discrimination? I mean, he did go through the EEO process on something, but not on that, right? Are you talking about the February 11 incident? Well, when you wanted leave to amend, you wanted to bring it under the ADEA, right? That's correct. All right. On the things that he did go through counseling, you know, that he did contact, what was that on? He went for counseling – well, what he raised in the pre-complaint counseling was the eye incident, was the harassment, denial of overtime from 95 until the current time, was this option letter that he received on June 30, 1997. But did he ever cast it in terms of his age? Yes. Oh, yes. Yes, he did cast it in terms of his age. It's in the pre-complaint counseling form, and it's in the EEO complaint. Yes, he based it, he did the check marks, and he alleged age and disability discrimination, and subsequently, in a later EEO charge, retaliation as well. Do you want to save what you have for rebuttal? You just have a little bit of time. Oh, okay. May it please the Court, my name is Tim Cabot. I'm an assistant U.S. attorney from Billings, Montana, and I represent the U.S. Postal Service in this case. Mr. Schlosser did work for the Postal Service for 23 years in Billings as a custodian, a mechanic, and later as a welder. As mentioned by his counsel, he had a good career with the Postal Service, received many accommodations for his service. But he became involved in a dispute with a coworker on February 11, 1997, over a coat. A windbreaker. A windbreaker, possibly. And he, in his words, got riled up, he left work, and he never returned. He never contacted the Postal Service to return to work. He never contacted the Postal Service to request an accommodation or a different job or a different duty station or anything else. What he did was he started a campaign of initiating EEO complaints against the Postal Service. And in all, he initiated five different EEO complaints, each containing multiple claims of employment discrimination. He initiated three workers' compensation claims. And those claims, at least the EEO claims, have culminated in the filing of this case in 2003, some six years after he left the workplace and never returned. His current complaint consists of, excuse me? I don't know if the record reflects it, but he did get compensation, at least one of those claims. Correct, Your Honor. He heard his eye on the job. Excuse me, Your Honor? He heard his eye on the job. And he claimed also to have sustained emotional injury as well. And the point is, a good point, Your Honor, is that a lot of his claims were really akin to an occupational injury. And he did file workers' compensation claims. And he is being compensated, as noted by the record, for those claims. I mean, I kind of got the sense when you were reciting what he was doing that these were somehow frivolous claims. No, Your Honor. For example, the eye claim is obviously not a frivolous claim. We do contest and would contest in district court that the eye injury is related to his work. But that's the OWCP's, whatever they do with those claims. It's not before us now. Exactly. For purposes of discussion this morning, I'd like to talk about the first three claims of his complaint first, because they are subject to dismissal and summary judgment on the same basis, and then the final three claims later. The first three claims, he doesn't have a viable claim under any of those counts of his complaint because he did not timely exhaust his administrative remedies for those claims. As the court, I'm sure, is aware, in order to properly exhaust those claims, he was required to contact an EEO counselor within 45 days of the matter alleged to have been discriminatory. And he didn't do that with any of the incidents alleged in the first three counts. In count one, the denial of overtime began in 1995. In count two, the incident apparently where a supervisor allegedly yelled at him occurred in 1996. And then the incident involving the dispute over the windbreaker occurred in February of 1997. As noted, he didn't initiate contact with an EEO counselor until July of 1997, some five months after he left his employment. And so he clearly did not pursue his administrative remedies with respect to any of those claims. Briefly, I'd also like to point out that he is attempting to rely on some type of a continuing violation doctrine to save those claims. But the Supreme Court's decision in Morgan has made clear that the continuing violation doctrine is simply no longer viable. Each discreet discriminatory act is a separately legally enforceable event, and you must file within 45 days of that event or lose the ability to recover for it. And it does not apply, as suggested in their brief, at least to claims that were filed prior to the Morgan decision. So we don't have to get into the pleadings, whether the pleadings were sufficient, whether he should have been allowed to amend with respect to the first three counts. It's clear that those claims were barred for his failure to timely exhaust. The last four counts, actually counts three through six, all involve disability-based discrimination claims that he was discriminated against based upon his disability under the Rehab Act. Now, under the Rehab Act, as the Court knows, requires several different things, but two things it requires, whether we're talking about an accommodation claim or whether we're talking about a disparate treatment claim, is he has to show, number one, that he's disabled within the meaning of the ADA, and he has to show that he's a qualified individual, that is, that he can perform the essential functions of the job without an accommodation. And in analyzing Mr. Schlosser's claims, there's two distinct time periods that we have to consider. We have to consider all the time period that he was employed at the Postal Service up until he left on February 11th of 1997, and then consider the time period since February 11th, 1997. Prior to February 11th, it was clear that he was not disabled. He didn't have any physical limitations. He could perform all aspects of his job. He had no limitations in his life activities. In his own words, he said, there ain't a man at the Postal Service that can follow me. In short, prior to that time, he did not consider himself disabled, and he did not believe that he was being discriminated against because he was disabled. After 1997, he contends that he had a severe disability. He maintains that after he left the job that day, that he wasn't able to perform his job. He maintains that he couldn't come back to work for the Postal Service under any conditions. He was offered a job at the Postal Service at a different location, same grade, same pay. He declined it and requested that the Postal Service have no further contact with him. So for all the claims prior to February 11th, 1997, which would be Counts 1, 2, and 3, he cannot establish a prima facie case of disability discrimination because he wasn't disabled. For all the claims after that time, which would be Counts 4, 5, and 6, he cannot establish a disability claim because he cannot establish that he was a qualified individual who could perform the functions of his job. The only remaining count Judge Callahad had some questions about in adverse employment action would be the retaliation claim that he's alleged in Counts 6. To go back a second, you said on 3 through 6 he can't establish that he was a qualified individual. Why? In order to establish that you're a qualified individual, you have to be able to show that you can perform the essential functions of the job with or without an accommodation. And he did not? Do we know? What does the record show? Well, by his testimony, by his assertions in this case, there is no way that he can return to the job, that under no circumstances was he employable, and under no circumstances can he return to the U.S. Postal Service. So by his own allegations, by his own contentions, he is not a qualified individual who can perform the functions of the job. The final discussing the retaliation claim, as Judge Callahad noted, it requires an adverse employment action. In this case, he claims that he was subject to an adverse employment action because he received hang-up calls. Receiving hang-up calls are not an adverse employment action. This Court has applied a fairly expansive definition of what an adverse employment action is, but it has also emphasized that it can't be trivial in nature. And as the District Court correctly concluded here, being subjected to what is essentially a childish prank, if in fact that did occur, it does not even approach the triviality requirement. If the Court has no further questions. I think she also claimed an adverse action on sending him a letter. That's correct, Your Honor. I was speaking of the adverse employment action in connection with his retaliation claim. Okay. Thank you. I would just like to address the retaliation argument that was just made. As I previously stated, the state of the law is that retaliation can be any act, whether related to employment or not related to employment, that would deter a person from engaging in protected activity. And certainly phone calls, hang-up calls by a supervisor that you believe has harassed you for two years over a period of months and months could certainly deter a person from protected activity. What evidence is there of who made the hang-ups? Pardon me? What evidence in the record is there of who made the hang-up calls? Well, it's cited in my brief. There is – there was a trap placed on the call, and it was a government number. And apparently at one point after caller ID was put on, they called back, and it was Mr. Harreld, the supervisor, who had called and hung up. And that's in the deposition of Mr. Schlosser. Okay. Your time is up, so wrap it up. Okay. Anyway, so that's just – it's our contention that the retaliation fully survives. It was exhausted, the administrative remedy, and it does encompass what retaliation is. Thank you. Thank you. This matter will stand submitted. United States of America v. Clarence Lindsay, D.C.
judges: Canby, Tashima, Callahan